**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **CRIMINAL NO. 25-cr-223-02** |
| | **:** | |
| **MYESHA BRANHAM,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |
| | **:** | |

**MOTION TO REVOKE CONDITIONS OF PRETRIAL RELEASE**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully moves this Court, pursuant to 18 U.S.C. § 3148(b), to hold a hearing for defendant Myesha Branham on violations of her pretrial release, revoke her pretrial release order, and detain her pending trial. The Government will provide the Court with clear and convincing evidence that the defendant intentionally violated her curfew numerous times, and Pretrial Services and the Government believe that the defendant is not amenable to release conditions, and should be held pending trial.

## I.    Factual Background

### Assault with the intent to Kill (July 7, 2025)

On Monday July 7, 2025, at 1:44 am, Metropolitan Police Department police officers were in the area of Martin Luther King Jr. Avenue, Southeast, when he heard multiple nearby gunshots. As MPD officers arrived in the area of the parking lot of the Crown Gas Station at 3011 Martin Luther King Jr. Avenue, SE, they observed multiple people running from the area. MPD officers then turned onto Parkland Place, SE and observed a male on the ground suffering from multiple

1

gunshot wounds to the back and head. ShotSpotter detected four gunshots at 3011 Martin Luther King Jr. Avenue SE.

While MPD officers were rendering aid to the victim, the victim advised that he knew the suspect who shot him and his girlfriend (defendant Myesha Branham). The victim advised that the defendants were in a white Chevrolet Malibu with dark tint; defendant Branham owns a white Chevrolet Malibu with dark tinted windows. D.C. Emergency Medical services transported the victim to a local hospital for treatment. Four cartridge casings and one bullet fragment were recovered from the scene next to the chair the victim was sitting in.

MPD detectives downloaded CCTV footage from the Crown gas station. The cameras did not face the direction of the shooting, but did face the gas pumps, and showed a white Chevrolet Malibu pull into the gas station at approximately 1:30 am. Co-defendant Anthony White exited the passenger side of the white Chevrolet Malibu and wandered back and forth in the parking lot. Co-defendant White went off screen multiple times towards where the victim was located on Parkland Place, SE. Defendant Branham was observed standing around the white Chevrolet Malibu and interacting with co-defendant White each time he came back. Co-defendant White and defendant Branham then walked off screen towards the victim. Shortly after individuals still in the frame react to gunshots being fired. Co-defendant White shot and severely injured the victim. Co-defendant White and defendant Branham are then observed walking back towards the white Chevrolet Malibu and fled the scene southbound on Martin Luther King Avenue, SE. Below is a still photograph taken from the Crown gas station CCTV showing defendant Branham and co-defendant White standing near the white Chevrolet Malibu shortly before the shooting.

**Still Photograph from Crown Gas Station**



At 2:33 am, while MPD officers were still on scene of the shooting, MPD Seventh District officers observed the white Chevrolet Malibu bearing DC License Plate JJ8939 northbound on Martin Luther King Jr. Avenue, SE stopped at the intersection of Morris Road, SE. Upon pulling behind the vehicle, defendant Branham, who was operating the vehicle with co-defendant White in the passenger seat and her two children in the back seat, sped away at a high rate of speed exceeding the speed limit, and disregarding several red lights. MPD officers voiced the lookout and advised the vehicle was fleeing on Shannon Place, SE. MPD officers lost sight of the vehicle in an alley off Shannon Place, SE. Shortly thereafter, MPD officers then observed the vehicle fleeing southbound on Martin Luther King Jr. Avenue SE, and turning onto Eaton Road, SE.

The defendant eventually stopped the Chevrolet Malibu in front of 2640 Wade Road, SE. Co-defendant White exited the passenger seat of the car and fled on foot down the stairs of the parking lot onto Wade Road, SE making good his escape. Defendant Branham told MPD officers she had just picked up "Tony" at the corner, and didn't know his full name. Seated inside the

3

white Chevrolet Malibu were defendant Branham's two children, ages 7 and 12 years old. Defendant was placed under arrest and transported to the seventh district for processing.

The shooting victim was transported to a local hospital in critical but stable condition. The victim suffered from a fractured spine, a severed spinal cord, and a punctured left lung. Doctors advised the victim has no sensation to the lower extremities, and is paralyzed.

On or about October 28, 2025, the defendant along with co-defendant White was named in a 13-count indictment. Specifically, defendant Branham was charged in Count Nine with Accessory After the Fact to Assault With Intent to Kill While Armed and Aggravated Assault While Armed, in violation of 22 D.C. Code §§ 1806, 401, 404.01, 4502 (2001 ed.); Counts Ten and Eleven with Second Degree Cruelty to Children, in violation of 22 D.C. Code § 1101(b) (2001 ed.); and Twelve with Fleeing From a Law Enforcement Officer, in violation of 50 D.C. Code § 2201.05b(b)(1) (2001 ed.). On or about October 30, 2025, this Court set conditions of release on defendant Branham to include a curfew "every day from 3:30 pm to 7:00 am." Document 20 at 3.[1] On December 2, 2025, United States Pretrial Services provided the Court with a Status Report updating the Court on defendant Branham's compliance. Document 25. In the Report, Pretrial Services Officer Lakeisha Forbes detailed that, "Location Monitoring: The defendant's GPS device was installed on 10/31/2025. The defendant's HISP orientation was also conducted on that date. On 11/27/2025, the defendant received a dead battery infraction. The defendant's GPS device was dead from 5:36pm on 11/26/2025 until 4:04am on 11/27/2025. Due to the defendant's GPS device being dead, the defendant went unmonitored during this timeframe." *Id* at 3.

---

[1]     On or about December 9, 2025, the grand jury returned a superseding indictment - Count Nine is now Count Eighteen, Counts Ten and Eleven are now Counts Nineteen and Twenty, and Count Twelve is now Count Twenty-One.

4

On January 14, 2026, the defendant filed an unopposed motion to modify conditions of release adjusting the defendant's curfew from 7:00 p.m., to 7:00 a.m. Mondays through Fridays stating that, "The hours of the curfew were meant to accommodate Ms. Branham's ability to take her children to school and bring them home from school. Since imposition of the curfew, it has become apparent that additional time outside of the defendant's home is necessary given school schedules and the after-school activities of her children." Document 28 at 1. On January 15, 2026, the Court granted the motion and the defendant's curfew was from 7:00 p.m., to 7:00 a.m., during the week, but the 3:30 p.m. curfew remained on weekends, *see* Minute Order dated January 15, 2026.

Again, on March 5, 2026, the defendant filed another unopposed motion to modify conditions of release requesting the curfew to cover Saturdays and Sundays (7:00 p.m., to 7:00 a.m.), which the Court granted on March 6, 2026, by way of Minute Order. On March 5, 2026, Pretrial Services provided another Status Report detailing the defendant's new violations of her curfew. Document 29. At the time that the government did not oppose the March 6, 2026 motion to modify release conditions, it was not privy to the March 5, 2026 Pretrial Services Status Report. The March 5, 2026 Pretrial Services status report details that:

**Pretrial Supervision Adjustment:**

PSA is respectfully requesting Program Removal due to the defendant not being compliant with conditions of release.

Location Monitoring:
-The defendant's GPS device was installed on 10/31/2025. The defendant's HISP orientation was also conducted on 10/31/2025. Since being installed on location monitoring the defendant has incurred multiple location monitoring infractions.
On 02/06/2026, the defendant left her residence at 7:58pm and did not return until 8:34pm. The defendant received a verbal reprimand and was instructed to comply with conditions of release.

On 02/14/2026, the defendant left her residence at 3:42pm and returned at 7:01pm. On 02/15/2026, the defendant left her residence at 3:54pm and returned at 4:14pm. On 02/17/2026, the defendant left her residence at 8:47pm and returned at 9:15pm. The defendant received verbal reprimands and was advised that any further location monitoring infractions would lead to the court being notified of her noncompliance.

On 02/28/2026, the defendant left her residence at 5:04pm and traveled to First Street NE, Washington, DC. She returned to her residence at 5:53pm.

On 03/03/206, the defendant returned home at 7:17pm which is after her curfew. The defendant left her residence at 8:25pm, and traveled to O Street NW, Washington, DC. She stayed at this location from 8:43pm until 8:49pm. The defendant returned to her residence at 9:04pm.

The defendant has been issued numerous verbal reprimands, but she still fails to comply with conditions of release. At this time PSA does not believe the defendant is amendable to conditions of release.

*Id*. at 2.

## II.    Relevant Legal Standards

Under 18 U.S.C. § 3148(a), "[a] person who has been released under section 3142 of this title, and who has violated a condition of his release, is subject to a revocation of release." Upon the government's motion to revoke a release order, such as the instant motion, "[a] judicial officer may issue a warrant for the arrest of a person charged with violating a condition of release, and the person shall be brought before a judicial officer in the district in which such person's arrest was ordered for a proceeding . . . ." 18 U.S.C. § 3148(b). The judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer:

(1) finds that there is –

(A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or

(B) clear and convincing evidence that the person has violated any other condition of release; and

6

(2) finds that –

>   (A) based on the factors set forth in section 3142(g) . . . , there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or
>
>   (B) the person is unlikely to abide by any condition or combination of conditions of release."

*Id*.

## III.    Discussion

The Court should revoke defendant Branham's release order pending trial under § 3148(b). First, the Government can establish clear and convincing evidence that defendant Branham has violated his conditions of release.   18 U.S.C. § 3148(b)(1)(B).   The evidence would include testimony from Pretrial Services Officer Lakeisha Forbes, and the GPS data collected during the course of the defendant's release.  The defendant's first violation occurred between November 26, 2025 at 5:36 p.m., until November 27, 2025, at 4:04 a.m.  Thereafter, the defendant violated her curfew four times on February 2, 2026, February 14, 2026, February 28, 2026,and March 3, 2026, even after the Court gave her more leniency on her curfew hours (7:00 p.m. to 7:00 a.m.). Additionally, even after Pretrial Services filed the March 5, 2026 Status Report, the defendant has violated her curfew additional times on March 8, 2026, and March 9, 2026.  The defendant has violated the curfew numerous times and has not taken her release conditions seriously. Furthermore, the defendant was "issued numerous reprimands" by Pretrial Services but blatantly refuses to comply with her release conditions.

Additionally, the government has been more than fair and recognizes the seriousness of loss of freedom.  The government at the defendant's detention hearing did not oppose her release for a very serious offenses on the defendant's word she would abide by conditions of release.   On

7

two occasions the government did not oppose modifying the defendant's conditions of release to accommodate her responsibilities.   However, at the time the government agreed to the modifications it was unaware of the defendant's violations.   The defendant has not violated her curfew once, but seven times, and continues to violate her curfew even after admonishment from Pretrial Services.

### IV. Conclusion

The government respectfully requests that this Court hold a hearing on the defendant's revocation, pursuant to 18 U.S.C. § 3148(b).  Following the hearing, the government requests that the Court issue an order of revocation and detention pending trial.

Respectfully submitted,

Jeanine Ferris Piro
United States Attorney

BY:  _____/s/_____
Yasmin Emrani
N.Y. Bar No. 5410980
Anthony Scarpelli
D.C. Bar No. 474711
Assistant United States Attorneys
U.S. Attorney's Office for the District of Columbia
601 D Street NW, Washington, D.C. 20530
Office: (202) 252-7754 (Emrani)
Office: (202) 252-7707 (Scarpelli)
Yasmin.Emrani@usdoj.gov
Anthony.scarpelli@usdoj.gov